UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **ELLIOTT D. LEVIN,** *Trustee*, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:11-cv-704-WTL-TAB |
| **FDIC,** *as Receiver of Irwin Union Bank, FSB,* | ) |
| *and Irwin Union Bank and Trust Co.*, | ) |
| | ) |
| Defendant. | ) |

| | |
|---|---|
| IN RE: | ) |
| | ) |
| **IRWIN FINANCIAL CORPORATION,** | ) |
| | ) |
| *Debtor*. | ) |
| | ) |
| **ELLIOTT D. LEVIN,** *Trustee*, | ) CAUSE NO. 1:11-cv-705-WTL-TAB |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| **FDIC,** *as Receiver of Irwin Union Bank, FSB,* | ) |
| *and Irwin Union Bank and Trust Co.*, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON MOTION TO WITHDRAW REFERENCES OF ADV. PRO.
NO. 11-50022 AND TRUSTEE'S OBJECTION TO FDIC-R'S PROOF
OF CLAIM AND TO CONSOLIDATE WITH DISTRICT COURT ACTION**

These cases are before the Court on motions by the FDIC, as receiver of Irwin Union Bank, FSB, and Irwin Union Bank and Trust Co., (the "FDIC-R"), entitled "Motion to Withdraw the References of Adv. Pro. No. 11-50022 and the Trustee's Objection to FDIC-Receiver's Proof of Claim and to Consolidate with District Court Action." The motions are fully briefed, and the Court, being duly advised, **GRANTS** the motions to withdraw the references for the reasons set forth below. The Court will address the motion to consolidate and proceedings related to

consolidation by separate entry.

## I. BACKGROUND

Irwin Union Bank, FSB ("IUBFSB") was a federally-chartered savings bank and wholly-owned subsidiary of Irwin Financial Corporation ("IFC"). Irwin Union Bank and Trust Company ("IUBTC", collectively with IUBFSB, the "Banks") was a state-chartered commercial bank and wholly-owned subsidiary of IFC. IFC is a former bank-holding company of IUBFSB and IUBTC.

On September 18, 2009, the Office of Thrift Supervision (the "OTS") closed IUBFSB and the Indiana Department of Financial Institutions closed IUBTC. The Federal Deposit Insurance Corporation (the "FDIC-R") was appointed receiver for the Banks.

The same day that the Banks closed, the IFC filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Indiana. Elliott D. Levin (the "Trustee") was appointed Chapter 7 Trustee for the Debtor's estate.

### A. Receivership Proceedings

Pursuant to 12 U.S.C. § 1821(d), the FDIC-R set December 23, 2009, as the last day to file claims against the Receiverships. The Trustee asserted claims on behalf of IFC against each Receivership by timely filing proofs of claim.

In letters dated August 25, 2010, the FDIC-R disallowed the Trustee's claims on the grounds that the claims had not been proven to the satisfaction of the FDIC-R. On October 22, 2010, the Trustee initiated an action in this Court, *Levin v. Federal Deposit Insurance Corporation*, 1:10-cv-01341-WTL-TAB, challenging the disallowance of these claims (the

"District Court Action").[1] Specifically, the Trustee sought a judicial determination of, among other things, the validity and proof of IFC's claims against the receiverships with regard to (1) taxes and tax refunds; (2) intercompany receivables; (3) affiliate transaction agreements; (4) the retention of physical assets by the FDIC-R; (5) losses resulting from mismanagement and breach of fiduciary duties; (6) a line of credit; (7) employee-related costs; (8) indemnification, contribution and reimbursement from claims against IFC; and (10) fraudulent transfers, including an alleged capital maintenance commitment.

On January 21, 2011, the FDIC-R answered the Trustee's complaint and asserted counterclaims against the Trustee. These counterclaims included (1) a claim that IFC was required to maintain and guarantee certain capital maintenance payments; (2) a claim of ownership of certain tax refunds; (3) a claim of entitlement to proceeds paid or payable under certain insurance policies, including insurance refunds; and (4) a claim for the remaining excess funds in employee benefit plans.

## B. Bankruptcy Court Proceedings

On February 9, 2010, the FDIC-R filed a proof of claim in IFC's bankruptcy case. On February 8, 2011, the Trustee filed an objection to the FDIC-R's proof of claim in the Chapter 7 Bankruptcy Case (the "Claim Objection"). The Trustee objected to, among other things, (1) the FDIC-R's claim regarding alleged capital maintenance commitments; (2) the FDIC-R's asserted ownership of tax refunds; (3) the FDIC-R's claimed entitlement to payment of insurance

---

[1] The Trustee filed this action pursuant to 12 U.S.C. § 1821(d)(6)(A), a section of the Federal Deposit Insurance Act, as amended by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), which permits a claimant whose receivership claim has been disallowed to file an action seeking a judicial determination of that disallowed claim in one of two federal district courts.

refunds, benefit plan refunds, deposit funds, and intercompany claims; (4) the FDIC-R's claim for recovery of property allegedly transferred by the Banks to IFC; and (5) the FDIC-R's claim for alleged breach of fiduciary duties by the officers and directors of IFC, as well as the FDIC-R's claim for reimbursement from IFC of amounts officers and directors may assert against FDIC-R for indemnification or advancement.

On January 20, 2011, the Trustee filed an action in the Bankruptcy Court, Adversary Proceeding No. 11-50022, seeking a declaration that the Trustee, as representative of the IFC's estate, is the owner of certain tax refunds (the "Tax Refund Adversary Proceeding") by virtue of a tax sharing agreement between IFC and the Banks.

On February 24, 2011, the FDIC-R filed the instant motions for withdrawal of the reference of both the Tax Refund Adversary Proceeding and the Claim Objection.

## II. <u>DISCUSSION</u>

Federal district courts have original and exclusive jurisdiction over cases under Title 11 of the United States Code. 28 U.S.C. § 1334. A district court may, however, refer cases under Title 11 to the bankruptcy judges for the district. 28 U.S.C. § 157(a). This Court refers all Title 11 cases to the bankruptcy court pursuant to Local Rule 83-8, but the Court may nevertheless withdraw all or part of a referred case from the bankruptcy court for cause shown. 28 U.S.C. § 157(d); *see In re Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996) (briefly discussing the "permissive withdrawal" provision). Furthermore, the Court *must* withdraw a referred case if the Court determines that resolution of the proceeding requires consideration of both Title 11 law and non-Title 11 law regulating organizations or activities affecting interstate commerce. 28 U.S.C. § 157(d); *see In re Vicars*, 96 F.3d at 952 (recognizing the accepted characterization of

the latter part of 157(d) as the "mandatory withdrawal" provision).

The moving party bears the burden to demonstrate that sufficient cause exists for permissive withdrawal. *E.g.*, *In re K & R Express Systems, Inc.*, 382 B.R. 443, 446 (Bankr. N.D. Ill. 2007). When making a determination whether cause exists for permissive withdrawal, the Court may consider (1) judicial economy, convenience, and the particular court's knowledge of the facts; (2) the promotion of uniformity and efficiency of bankruptcy administration; (3) the reduction of forum shopping and confusion; (4) conservation of debtor and creditor resources; (5) whether the proceeding is core or non-core; and (6) whether the parties have requested a jury trial. *In re Sevko, Inc.*, 143 B.R. 114, 117 (N.D. Ill. 1992). The most important factor is whether a proceeding is core or non-core. *E.g.*, *Grochocinski v. LaSalle Bank Nat'l Ass'n (In re K&R Express Sys.)*, 382 B.R. 443, 446 (N.D. Ill. 2007).

The Trustee argues that the issues in the instant motion concern "core" proceedings, thus "eviscerating any argument by the FDIC-R that permissive withdrawal is appropriate here." *See Pan Am Corp. v. Delta Air Lines (In re Pan Am Corp)*, 163 B.R. 41, 43 (S.D.N.Y. 1993) (noting the strong presumption against the withdrawal of core bankruptcy proceedings). Yet in the context of withdrawal, whether a proceeding is core or non-core may be seen as shorthand for the analysis of efficiency, uniformity, and judicial economy concerns. *See In re K&R Express Sys.*, 382 B.R. at 446 ("efficiency, uniformity and judicial economy concerns are largely subsumed within [the core proceeding inquiry]"). Even if the proceedings at issue are properly deemed "core" in this case, as discussed below, concerns of judicial economy and efficiency, avoidance of confusion, and conservation of resources rebut any presumption against withdrawal arising by virtue of this fact.

5

## A. The Tax Adversary Proceeding

The FDIC-R argues that withdrawal is appropriate for the sake of judicial efficiency, reduction of party expenses, and swift resolution of duplicative litigation because the claims in the Tax Refund Adversary are "essentially the same" as those raised in the District Court Action. The Court agrees.

In the case before the Court, the Trustee argues, among other things, that ownership of certain tax refunds is vested solely in IFC by way of a "Tax Sharing Agreement," and, as a result, the Trustee seeks an order under 11 U.S.C. § 542 directing the FDIC-R to turn over or pay the Trustee any and all refunds received. In the Tax Adversary Proceeding before the Bankruptcy Court, the Trustee seeks a declaratory judgment that IFC is the sole owner of certain tax refunds and thus these refunds are the property of IFC's Chapter 7 estate. The Trustee then seeks a turnover order pursuant to 11 U.S.C. § 542. The identity of these two claims is plain; indeed, several of the key paragraphs in the later-filed Adversary Proceeding are copied verbatim from the District Court Action. As the District Court Action is properly before this Court pursuant to 12 U.S.C. § 1821(d)(6)(A), the Court will already be familiarizing itself with the facts, issues, and parties before it in the course of deciding that action, including declaring the parties' rights to the tax refunds. It is only a matter of common sense, then, that the Tax Adversary Proceeding *seeking the same determinations* be withdrawn from the bankruptcy court. In this way, withdrawal will serve the ends of judicial economy and efficiency and will reduce confusion among the parties as to the proper court before which to litigate their claims. In withdrawing the case and so reducing confusion and duplicative filing, the Court also conserves

debtor and creditor resources.[2]

## B. The Trustee's Claim Objection

The FDIC-R puts forth the same arguments with respect to the Claim Objection: the allegations are "essentially the same," and withdrawal will aid judicial efficiency, conservation of resources, and swift resolution of duplicative litigation. Again, the Court agrees.

Issues in the Claim Objection and the District Court Action significantly overlap. The Claim Objection disputes the ownership and possession of tax refunds, just as the Tax Refund Adversary and District Court Action do. In addition, in the Claim Objection the Trustee denies that IFC owes any capital maintenance obligations to the Banks and other entities, just as the Trustee maintains in the District Court Action. The Trustee also objects to the FDIC-R's claim for payment of benefit plan refunds, while in the District Court Action, the Trustee reserves the right to assert IFC's entitlement to reimbursement of benefit plan funds. The Trustee further objects to the FDIC-R's claim for indemnity or contribution with respect to pending or future litigation, while in the District Court Action the Trustee asserts IFC's entitlement to indemnity and contribution with respect to pending or future claims against IFC for acts or omissions of the Banks. While not every issue raised in the Claim Objection is raised in the District Court Action, and vice-versa, the list goes on. In fact, the overlap of claims is more pronounced when the Court considers the substance of the FDIC-R's counterclaims in the District Court Action.[3] For

---

[2] In fact, the Court notes that the Trustee does not deny that the potential for judicial inefficiency and wastefulness exists; rather, the Trustee suggests alternative ways in which the Court may resolve the issue, alternatives the Court declines to adopt.

[3] The FDIC-R moved for modification of the automatic stay to permit it to file and pursue the counterclaim.

example, the FDIC-R asserts entitlement to proceeds payable under insurance policies, a claim the Trustee disputes in the Claim Objection. The Court finds that there is a sufficient identity and/or relationship of claims such that it would be highly inefficient for the claim objection to proceed on a parallel track in the bankruptcy court while this Court is already familiarizing itself with and deciding most of the relevant issues.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** FDIC-R's motion to withdraw the references of the Tax Adversary Proceeding and the Trustee's Objection.

The Clerks of the respective courts are directed to effectuate this withdrawal as follows. This Court's cause number 1:11-cv-704-WTL-TAB shall proceed as the Tax Adversary Proceeding, originally filed in the Bankruptcy Court as case number Adv. Pro. No. 11-500022. This Court's cause number 1:11-cv-705-WTL-TAB shall proceed as a cause of action to determine the Trustee's Objection, originally filed in bankruptcy case number 09-13852-FJO-7A (dkt. no. 401).

The Court will address the motion to consolidate and proceedings related to consolidation by separate entry.

SO ORDERED: 01/19/2012

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies:

All counsel of record, via electronic communication

Clerk of the Bankruptcy Court of the Southern District of Indiana